**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANDUALEM LEMMA KETYIBELU,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER BULLOCK,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:26-cv-03025-TLP-atc |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Andualem Lemma Ketyibelu, a noncitizen detained in the Western District of Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1 at PageID 1–3.) The Court ordered Respondent to show cause why the Writ should not be granted. (ECF No. 4.) Respondent responded. (ECF No. 6.) And Petitioner replied. (ECF No. 7.)

For the reasons below, the Court **GRANTS** the Petition and **ORDERS** Petitioner's immediate release.

## BACKGROUND

Petitioner, a citizen of Ethiopia, has lived in the United States since his lawful admission into the country in 2024.[1] (ECF No. 1 at PageID 2, 10.) Since learning that his son has bilateral Wilms tumor, Petitioner has periodically traveled to Memphis to seek medical care for his son at St. Jude Children's Research Hospital. (*Id.* at PageID 1, 10–11.)

[1] Petitioner notes that his I-94 record reflects that he was admitted as a B-2 visitor until November 24, 2024. (ECF No. 1 at PageID 10.) In early 2025, Petitioner applied for asylum and for withholding of removal, but his application is pending. (*Id.* at PageID 13.)

On August 6, 2026, the U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner at the Memphis International Airport while he waited to board a return flight to Maryland with his wife and minor son. (*Id.* at PageID 1, 11.) Petitioner alleges that he was served with a Notice to Appear ("NTA") that charged him with "remaining in the United States after the expiration of his six-month period of authorized stay." (*Id.* at PageID 13.)

But Petitioner also alleges that ICE has not filed the NTA with the Executive Office of Immigration Review ("EOIR") and that it has deprived him of an "opportunity to contest his custody before a neutral decisionmaker." (*Id.*) What is more, Respondent neither claims nor provides any evidence that he issued Petitioner an initial custody determination. (*See* ECF No. 6.) Respondent notes that Petitioner's case was "processed as" an NTA and that Petitioner "has no pending motion for [a] bond hearing with the immigration court." (*Id.* at PageID 28.)

Since ICE detained him, Petitioner has been in Respondent's custody at the West Tennessee Detention Center. (ECF No. 1 at PageID 13.) Petitioner explains that he is the "primary breadwinner for his family," his son is receiving medical treatment at St. Jude, and each "moment he spends away from his son is a needless burden for him" and "his ailing son." (*Id.* at PageID 9.) He now challenges his detention as unlawful. (*Id.* at PageID 19.)

## **ANALYSIS**

Petitioner argues that his detention without a bond hearing violates his rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (*Id.* at PageID 17.) He emphasizes his detention without notice or cause; and he stresses that ICE has not filed an "[NTA] or any other documentation with EOIR," or provided him "an opportunity to contest his custody before a neutral decisionmaker." (*Id.* at PageID 13, 17.) Respondent counters with just

one argument: Petitioner "has failed to exhaust his administrative remedies in immigration court," so the Court should deny his Petition. (ECF No. 6 at PageID 28.)

Federal courts may grant a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). These protections apply to noncitizens as well as citizens. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Noncitizens who have 'passed through our gates, even illegally, may be expelled only after proceedings conforming to the traditional standards of fairness encompassed in due process of law.'" *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

On May 11, 2026, the Sixth Circuit decided *Lopez-Campos*, affirming that a noncitizen who has spent "significant time . . . within the interior of the United States," and who has not committed an offense rendering them ineligible under § 1226(c), may not be detained without an individualized bond hearing. *Id.* at 734. "To hold otherwise would subject long-term law-abiding residents in the United States . . . to the hardship of mandatory detention without due process." *Id.* at 735. Respondent acknowledges that *Lopez-Campos* applies to Petitioner's case. (ECF No. 6 at PageID 28.)

Federal courts must require administrative exhaustion where Congress "specifically mandates" it. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). But when no statute mandates exhaustion, whether to require exhaustion of administrative remedies lies within "sound judicial discretion." *See id.* The Court has that discretion here.

Before the Sixth Circuit's decision in *Lopez-Campos*, this Court had excused exhaustion for some noncitizens challenging their detention before ruling on their petitions. It did so because, in those cases, administrative exhaustion was futile. *See, e.g.*, *Urrutia-Diaz v. Ladwig*,

No. 25-3098, 2025 WL 3689158, at *4 (W.D. Tenn. Dec. 19, 2025). Since the Sixth Circuit decided *Lopez-Campos*, this Court has required administrative exhaustion so long as Respondent has allowed petitioners to exhaust administrative remedies. *See, e.g.*, *Soto-Vieyra v. Bullock*, No. 2:26-cv-03009-TLP-TMP, 2026 WL 2634138, at *2 (W.D. Tenn. Sept. 8, 2026).

Yet where a petitioner cannot "exhaust prescribed administrative remedies," the Court adopts a different approach. *See McCarthy*, 503 U.S. at 144. In such a case, denying a habeas petition for failure to exhaust administrative remedies would disregard the Sixth Circuit's holding in *Lopez-Campos*. *See Lopez-Campos*, 175 F.4th at 734–35. That denial would allow Respondent to detain noncitizens without an individualized bond hearing or the ability to request such a hearing. *See id.* at 734.

Here, Petitioner cannot exhaust "prescribed administrative remedies." *See McCarthy*, 503 U.S. at 144. He cannot because Respondent effectively blocked him from using internal administrative procedures to seek a bond hearing under § 1226(a). (*See* ECF No. 1 at PageID 13.) Petitioner specifically explains that ICE failed to "file[] [an NTA] or any other documentation with EOIR and has not provided Petitioner an opportunity to contest his custody before a neutral decisionmaker." (*Id.*) And as he correctly notes, ICE's detention coupled with its failure to "file the charging document necessary to commence" removal proceedings means that Petitioner's detention has become "untethered from the ordinary process meant to justify it." (*Id.* at PageID 13–14.)

Once ICE takes a noncitizen into custody, it must determine "whether the alien will be continued in custody or released on bond or recognizance" and whether to issue an NTA. 8 C.F.R. § 287.3(d). Absent extraordinary circumstances, ICE must make its determination within forty-eight hours of the arrest. *Id.* An Immigration Judge has jurisdiction to conduct a bond

hearing only after ICE makes this custody determination. *See id.* § 1003.19(a).

That is, a bond hearing in front of an Immigration Judge is a "redetermination" of ICE's initial custody determination.[2] *See* 8 C.F.R. § 1003.19(b). And on Petitioner's uncontested account, Respondent barred him from seeking a redetermination because it issued no initial custody determination in the first place. (*Compare* ECF No. 1 at PageID 13–14, *with* ECF No. 6 at PageID 28–30.)

So because ICE has failed to issue Petitioner a Notice of Custody Determination, Respondent has barred Petitioner from exhausting his administrative remedies by seeking a bond hearing. (*See* ECF No. 1 at PageID 13; 8 C.F.R. §§ 287.3(d), 1003.19(a).) And failure to provide Petitioner with a bond hearing violates his right to procedural due process under *Lopez-Campos*. *See* 175 F.4th at 734. Because the Court finds that Respondent is detaining Petitioner in violation of his due process rights, the Court will not address Petitioner's other arguments.

Having determined that Respondent violated Petitioner's procedural due process rights, the Court must determine the adequate remedy. Other district courts have ordered Respondent to release a petitioner immediately after Respondent denied them a bond hearing. *See Perdomo Amaya v. Bullock*, No. 3:26-cv-01341, 2026 WL 2873809, at *2 (M.D. Tenn. Sept. 24, 2026) ("[T]he court finds that the Petitioner's detention violated his due process rights and that a bond hearing at this point could not cure that blatant constitutional violation."); *see also Castro Cabrera v. Bullock et al.*, No. 3:26-cv-01322, ECF No. 11 at PageID 68 (M.D. Tenn. Sept. 21, 2026) (using its discretion to find immediate release justified after the Government failed to

---

[2] In fact, Respondent even describes this process in its Response: "Initially, the bond is set by [the Department of Homeland Security ("DHS")]. Upon the alien's request, an Immigration Judge may conduct a 'bond hearing,' in which the Immigration Judge has the authority to redetermine the amount of bond set by DHS." (ECF No. 6 at PageID 29 (emphases removed) (quoting Exec. Off. of Immigr. Rev., Immigration Court Practice Manual § 8.3(a)).)

provide petitioner with a Notice of Custody Determination).

The Court agrees with their reasoning. Ordering a bond hearing here would not cure Respondent's unconstitutional detention of Petitioner.

## CONCLUSION

The Court therefore **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** Petitioner's immediate release from custody.

**SO ORDERED**, this 22nd day of October, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE